Harold C. GERTH, individually, and as personal representative of the Estate of Randy Gerth, Plaintiff-Respondent,

v.

The AMERICAN STAR INSURANCE COMPANY, a foreign insurance corporation, Defendant-Appellant,†

AMERICAN MOTORISTS INSURANCE COMPANY, a foreign insurance corporation, Defendant-Respondent.

Court of Appeals

*No. 91-0066. Submitted on briefs December 9, 1991.—Decided January 28, 1992.*

(Also reported in 480 N.W.2d 836.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James P. Brennan* of *Brennan & Collins* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John W. Markson* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert R. Studt* and *Lawrence E. Bechler* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. American Star Insurance Company appeals a default judgment awarded against it because of its failure to timely answer the complaint, and an order that denied American Star's motion to extend the time for answering and granted Harold Gerth's motion to strike American Star's answer to the pleadings.

American Star contends that the trial court abused its discretion by refusing to grant it additional time to answer the complaint, by striking its untimely answer and by entering a default judgment because American Star's failure to timely answer the complaint was the result of excusable neglect. American Star also contends that the trial court's award of $300,000 for conscious pain and suffering is unsupported by the evidence. Finally, American Star contends that the trial court erred by awarding American Motorists Insurance Company a judgment for $104,404, an amount American Motorists paid to the state treasury pursuant to sec. 102.49(5)(b), Stats. American Star contends that because American Motorists did not make a specific cross-claim against American Star for this money, American Motorists could not recover this money as part of the default judgment.

We conclude that the trial court was entitled to find that American Star's failure to timely answer the complaint was not the result of excusable neglect. Therefore, the trial court did not abuse its discretion by refusing to grant American Star an extended period of time to answer, by striking the untimely answer and by entering

1003

a default judgment against American Star. We also conclude that the court's award of $300,000 for conscious pain and suffering is supported by sufficient evidence. Finally, because American Motorists was a party to the action and made a claim to recover the money it paid to the state treasury in its answer to the complaint, we conclude that pursuant to sec. 102.29(2), Stats., the trial court properly awarded a judgment in this amount to American Motorists. The judgment and order are affirmed.

The essential facts are not in dispute. Randy Gerth, an employee of the Friskies division of the Carnation Company, was seriously injured at work when a retort vessel manufactured and sold by Reid Boiler Works, Inc., exploded. Gerth was seriously burned and died as a result of his injuries twelve days after the accident. Harold Gerth, Randy's father, commenced an action on behalf of Randy's estate against Reid. Gerth also joined the Carnation Company's worker's compensation insurer, American Motorists, in the action. Later, Gerth filed an amended summons and complaint adding Reid's liability insurer, American Star, as a defendant.

On October 24, 1989, Gerth served American Star by delivering two copies of the amended summons and complaint to the commissioner of insurance. On October 25, 1989, the commissioner mailed the process to American Star Insurance Company, P.O. Box 1407, Waukesha, Wisconsin 53187, to the attention of Richard Bird. The Waukesha office, the office designated by American Star as its address for service of process in the insurance commissioner's office, stamped the document "Claims Received-October 27, 1989," and sent the return receipt to the insurance commissioner's office. The document was forwarded from the Waukesha office to American

Star's San Francisco office. The document was not received in San Francisco until November 13, 1989.

American Star's time for filing an answer to the complaint expired November 14, 1989. *See* sec. 601.73(2)(c), Stats. Because American Star had not filed an answer, Gerth filed a motion for default judgment against American Star on November 29, 1989.

American Star opposed the motion for default judgment and moved the court to extend time for answering the complaint. American Star argued that its failure to timely answer the complaint was the result of excusable neglect. American Star filed an answer to the complaint on November 29, 1989.

The court found that American Star's delay in answering the complaint was not the result of excusable neglect. Therefore, the court granted Gerth's motion to strike American Star's untimely answer and entered a default judgment.

Subsequently, the court held a hearing to determine the nature and amount of the damages. After hearing evidence that included hospital records, medical and funeral bills, and the testimony of Randy's primary surgeon and a nurse who cared for Randy throughout his hospitalization, the court found damages in an amount totaling $464,083.31. This amount included $300,000 for Randy's pain and suffering prior to his death. From the total damages awarded, $118,110.01 was paid to American Motorists as reimbursement for worker's compensation benefits.

Because Randy had no dependents at the time of his death, American Motorists paid $104,404 to the state treasury pursuant to sec. 102.49(5)(b), Stats.[1] American

---

[1]Section 102.49(5)(b) provides in relevant part:

[I]n each case of injury resulting in death leaving no person depen-

Motorists requested recovery of this amount in its answer and amended answer to the complaint. Therefore, in addition to the damages awarded to Gerth, the court awarded American Motorists a judgment for this amount.

We first address American Star's contention that the trial court abused its discretion when it refused to grant American Star an enlarged period of time within which to answer the complaint and, instead, entered a default judgment against American Star.

Section 801.15(2)(a), Stats., provides:

> When an act is required to be done at or within a specific time, the court may order the period enlarged but only on motion for cause shown and upon just terms. . . . If the motion is made after the expiration of a specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

American Star made its motion to enlarge the time period after the specified time expired, hence, its motion could not be granted unless the court found that its failure to act was the result of excusable neglect.

A trial court's decision as to whether excusable neglect exists is discretionary. *See Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 470, 326 N.W.2d 727, 732 (1982). We will not overturn a trial court's exercise of discretion unless it is clearly shown that the trial court abused its discretion. *Id.* A trial court does not abuse its discretion when it examines the relevant facts, applies the proper standard of law and, using a demonstrated rational pro-

dent for support, the employer or insurer shall pay into the state treasury the amount of the death benefit otherwise payable, minus any payment made under s. 102.48(1), in 5 equal annual instalments with the first instalment due as of the date of death.

cess, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).

"Excusable neglect" for noncompliance with the statutory time period for performing an act is not synonymous with neglect, carelessness or inattentiveness. *Hedtcke,* 109 Wis. 2d at 468, 326 N.W.2d at 731. Rather, excusable neglect is that which might have been the act of a reasonably prudent person under the same or similar circumstances. *Id.*

The court, in this case, found that American Star's neglect was not excusable. American Star contends that the trial court's determination was erroneous. American Star confuses the real issue by raising facts that suggest defective service of process. However, American Star admits in its brief that "American Star made a conscious decision to not raise the issue of service." Therefore, for purposes of this appeal, we will ignore any implication that service was made in an improper manner, but we will consider the manner of service as it affects the issue of excusable neglect.

American Star's argument for excusable neglect is a bare assertion that the document in Waukesha had to be transferred to San Francisco and that this transfer took time. American Star, however, offers no explanation as to why the document was not received in the San Francisco office until nineteen days after it was received in Waukesha. Although American Star asserts that the document was improperly addressed to the attention of Richard Bird, a person who no longer works for American Star, it introduced no evidence that this fact impeded the efficient handling of the document.

In an attempt to support its argument, American Star asserts that it was reasonable for the claims man-

ager in San Francisco to believe he had twenty days from the time he received the document to file the answer based on the language in the summons that states "within twenty (20) days of receiving this amended summons, you must respond with a written answer." This argument is without merit.

First, we note that, whether reasonable or not, the claims manager's belief does not cure American Star's remarkable absence of explanation why it took nineteen days, in the era of overnight express mail and telefacsimile machines, for this important document to travel from the Waukesha office to the San Francisco office. In addition, because the document contained the date that the insurance commissioner mailed the document and was stamped "received" along with the date that it was received by the Waukesha office, we conclude that American Star has failed to demonstrate that the claims manager's belief that he had twenty days from the date that he received the document to answer was reasonable or the product of excusable neglect. The failure of a claims manager, whose job it is to handle legal documents, to investigate the proper date on which the answer was due, constitutes neglect, but is not "excusable." Therefore, because American Star offered, in effect, no explanation for its failure to timely answer the complaint, the trial court did not abuse its discretion by denying American Star's motion to enlarge the time for answering, striking its answer to the pleadings and entering a default judgment against it.

American Star also asserts that the interests of justice require a contrary result. It argues that justice is not served when it suffers a default judgment of over $500,000 when its answer was only fifteen days late.

American Star asserts that the Wisconsin Supreme Court's decision in *Hedtcke* supports its position.

In *Hedtcke,* the court did state that "[t]he interests of justice require the circuit court to be aware of the effects of an order denying or granting relief." *Id.* at 469, 326 N.W.2d at 731. However, the court went on to conclude that the trial court in that case abused its discretion because without "excusable neglect," the court granted the motion to enlarge time for the sole reason that " 'to be two weeks late in filing an answer is no reason for the court to allow default judgment in the amount of $41,000.' " *Id.* at 472, 326 N.W.2d at 733. Therefore, before the interests of justice compel a court to grant a motion to enlarge time, there must first be evidence of excusable neglect. Here, there is no such evidence. Therefore, the trial court properly denied American Star's motion.

Next, we address American Star's contention that the evidence is insufficient to support an award of $300,000 for conscious pain and suffering. We will sustain a damage award as long as the award is within reasonable limits and there is any credible evidence in the record to support it. *Cords v. Anderson,* 80 Wis. 2d 525, 552-53, 259 N.W.2d 672, 685 (1987).

The evidence demonstrates that Randy lived for twelve days after the accident. The accident caused severe burns over 70-80% of his body. Burns covered his torso, chest, back, both arms and all the way around both legs. He suffered burns on his head and on his genitals. The record demonstrated that Randy was both conscious and alert at various times following his injury.

Randy underwent eight hours of surgery during which a tear to his liver was repaired, fractures to the

bones in both lower legs were reduced and pins were inserted. Plastic surgery was performed to repair a broken nose and to close the laceration over his eye. Burn surgeons performed escharotomies on Randy. An escharotomy is a surgical incision made through burned skin leaving the tissue open. Such incisions were made to Randy's arms, legs and on the sides of his torso from his armpits to his waist. In addition, an endotracheal tube was inserted to enable him to breathe.

Daily, the burns were scraped, scrubbed, and rinsed with sterile water and Silvadene cream was applied. Randy's leg was eventually amputated because of infection. Throughout his hospitalization morphine was administered to reduce the pain. However, at various times, Randy's unstable medical condition would only allow reduced morphine amounts or a few times no morphine at all. Randy ultimately succumbed to infection and died.

█

Randy was the victim of an almost incomprehensible traumatization to his entire body. His condition required a number of complex and painful medical procedures in an effort to sustain his life. Based on the nature of Randy's injuries, the painful procedures he endured and the length of time he suffered before he died, we conclude that the evidence supports the trial court's award.

We reject American Star's suggestion that substantial pain and suffering damages were inappropriate because the pain was modified by the use of drugs. American Star offered no proof that the medications Randy received eliminated the intense pain attendant to the types of injuries and procedures he experienced. Even if we accept the premise that the pain medication assisted in reducing the pain, we conclude that the evi-

dence of physical and psychological suffering that Randy went through during his periods of consciousness provide a sufficient basis to support the trial court's damage award.

Finally, we address American Star's contention that American Motorists was improperly awarded the $104,404 that it paid to the state treasury. American Star asserts that although sec. 102.29(2), Stats., gives American Motorists the right to recover the money it paid to the state treasury, the rules of civil procedure require that American Motorists either commence a separate suit against American Star, or if joined in the present action American Motorists must assert a "cross-claim" against American Star to be entitled to the money. American Star asserts that because American Motorists neither commenced a separate action, nor filed a separate cross-claim, it cannot recover this amount as part of the default judgment.

American Motorists, on the other hand, argues that sec. 102.29(2), Stats., specifically governs worker's compensation claims and, because sec. 102.29 contains no requirement that it assert a separate cross-claim against American Star, American Motorists' joinder in the action and notice in its answer to the complaint that it was seeking recovery of this money entitled it to the award upon American Star's default.

The resolution of this issue involves statutory interpretation. Statutory interpretation presents a question of law that we review de novo. *State v. Michels,* 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987). It is a general rule of statutory interpretation that a statute setting forth a specific procedure takes precedence over a statute setting forth a general procedure otherwise appli-

cable. *State ex. rel. S.M.O. v. Resheske,* 110 Wis. 2d 447, 453–54, 329 N.W.2d 275, 278 (Ct. App. 1982).

■

Section 102.29, Stats., is a specific procedural statute governing worker's compensation claims where a third party, someone other than the employee or employer, is sued for tortious conduct. With regard to sec. 102.29, the ordinary rules of civil procedure do not apply. For instance, a person who has a "claim" under sec. 102.29(1) does not even have to participate in the action to be entitled to the proceeds of the action as long as it gives notice of its claim. *See Guyette v. West Bend Mut. Ins. Co.,* 102 Wis. 2d 496, 307 N.W.2d 311 (Ct. App. 1981) (court held that as long as notice was given, even the statute of limitations did not prohibit insurer with claim from participating in the proceeds of sec. 102.29 action).

Section 102.29(2), Stats., provides in relevant part:

> In the case of liability of the employer or insurer to make payment into the state treasury under s. 102.49 or 102.59, if the injury or death was due to the actionable act, neglect or default of a third party, the employer or insurer shall have a right of action against such third party to recover the sum so paid into the state treasury, which right may be enforced either by joining in the action mentioned in sub. (1), or by independent action.

Thus, this section specifically gives American Motorists the right to recover the money it paid to the state treasury as a party joined in the action. Moreover, the statute specifically contemplates recovery even when the third party defaults.

■ In this case, American Motorists "joined in the action mentioned in sub. (1)" as required under sec. 102.29(2), Stats. Next, following the procedures under subsec. (1), as a party to that action, American Motorists gave notice of its claim to the money it paid to the state treasury by requesting recovery of it in its answer to the complaint. Nothing in sec. 102.29 requires American Motorists to denominate a separate cross-claim against American Star before it is entitled to recover this money. Therefore, because American Motorists both joined the action and gave notice of its right to recover the money it paid to the state treasury, we conclude that the trial court properly awarded this money to American Motorists as part of its default judgment. We affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.