SENTRY INSURANCE, a Mutual Company and Linda A. Schwallie, Plaintiffs-Appellants,

v.

ROYAL INSURANCE COMPANY OF AMERICA, and General Motors, Defendants-Respondents,

POMPROWITZ APPLIANCE SALES & SERVICE and ABC Insurance Company, Defendants.

Court of Appeals

*No. 94–3428. Submitted on briefs August 14, 1995.—Decided September 19, 1995.*

(Also reported in 539 N.W.2d 911.)

908

909

For the plaintiffs-appellants the cause was submitted on the briefs of *Beth Rahmig Pless* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay.

For the defendants-respondents the cause was submitted on the brief of *Ann Marie Walsh* and *Jennifer A. Kenedy* of *Lord, Bissell & Brook* of Chicago and *Susan J. Reigel* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

910

MYSE, J. Sentry Insurance and Linda A. Schwallie appeal an order imposing sanctions and a judgment dismissing their complaint against Royal Insurance Company of America and General Motors. Sentry contends that the trial court erroneously exercised its discretion by granting Royal additional time to answer the complaint and by denying Sentry's motion for default judgment. Sentry further contends that the trial court erroneously exercised its discretion by prohibiting the introduction of any evidence concerning the condition of a refrigerator as a sanction for improperly engaging in destructive testing of the refrigerator and subsequently allowing its disposal. Because we conclude that the trial court reasonably exercised its discretion in both instances, we affirm the trial court's order and judgment.

This case arose as a result of a fire at Linda Schwallie's home. The fire caused extensive damages that required Schwallie's insurer, Sentry, to compensate her in excess of $100,000. Sentry, subrogated to Schwallie's rights, alleged that a Frigidaire refrigerator, manufactured by General Motors, caused the fire.

Following the fire, the refrigerator was stored in a warehouse owned by Zolper Construction. Thomas Elbert, an expert hired by Sentry, examined the refrigerator to determine the cause and origin of the fire. Elbert went to the warehouse where the refrigerator was stored, took numerous photographs of the refrigerator and removed a variety of parts, including the burned timer motor, the wire assembly and wires attached to the compressor, the compressor thermostat, the upper limit thermostat, the burned capacitator, the compressor motor on/off switch, and

the frame supporting apparatus. Elbert concluded that the fire originated in the right front section beneath the refrigerator due to the failure of the electrical component parts, including the capacitator, timing motor and timing motor switch. The report of the Allouez Fire Department also suggested that the fire was caused by a short in the wires in the bottom of the refrigerator.

Following Elbert's investigation, Sentry presented a claim to Royal Insurance Company of America, the insurer for General Motors. Sentry forwarded a copy of Elbert's report detailing his findings and including some of the photographs of the refrigerator. Royal made no requests or arrangements to inspect any part of the refrigerator until almost one year had transpired; Royal then demanded to see the right front door of the refrigerator. Sentry responded that the right front door was not attached to the refrigerator and was not available. Settlement negotiations continued over the next several months.

More than three years after presenting the initial claim to Royal, plaintiffs filed suit against General Motors and Royal. Royal's expert still had not inspected the refrigerator. Sentry subsequently informed the defendants that the refrigerator had been discarded in the local landfill by the warehouse owner. The warehouse owner contended that Sentry authorized the disposal of the refrigerator. However, Sentry claimed that the disposal was done without authorization and contrary to its instructions to the warehouse owner.

Royal responded to the summons and complaint two days beyond the twenty-day limit provided by § 802.06(1), STATS. Sentry subsequently moved the trial court to strike the answer and enter default judgment against Royal. Royal claimed that its failure to answer

within the statutory time was a result of excusable neglect and demonstrated that clerical error had caused the summons and complaint to be inadvertently attached to Royal's pre-suit file, which was then sent for reproduction. It was not until the file was returned from reproduction that Royal discovered the error. Royal filed its answer within twenty-four hours of this discovery. The trial court concluded that Royal's failure to answer within the statutory time was the result of excusable neglect and extended the time to answer. Accordingly, the court denied Sentry's motion for default judgment.

The court then heard Royal's motion for sanctions based upon Sentry's destructive testing and ultimate disposal of the refrigerator. Royal contended that the removal of the components of the refrigerator destroyed Royal's ability to determine whether the refrigerator was the source of the fire because its expert could no longer conduct tests on the electrical circuit and could no longer check the wiring throughout the refrigerator to see that it was properly connected, looped and routed. Royal further contended that the disposal of the refrigerator precluded it from determining the serial number or model number of the refrigerator and prevented examination of the condition of certain seals around the wires that affect the durability of various components.

The trial court concluded that while Sentry may not have intentionally ordered the disposal of the refrigerator, its failure to take adequate steps to preserve this evidence was "at a minimum" negligence. The court also held that the removal of the component parts from the refrigerator was intentional and that both the disposal of the refrigerator and the removal of these parts destroyed Royal's ability to adequately

913

defend the claim that the refrigerator caused the fire. Because Royal would not have an opportunity to defend this claim based upon Sentry's conduct, the court ordered a sanction excluding all evidence regarding the condition of the refrigerator. The court subsequently entered summary judgment dismissing Sentry's claim because Sentry could not maintain its claim without evidence of the condition of the refrigerator.

First, we address Sentry's contention that the trial court erred by granting Royal's motion to extend the time to answer under § 801.15(2)(a), STATS.,[1] and denying Sentry's motion for default judgment. We will not disturb the trial court's decision to deny default judgment and to enlarge the time for filing an answer unless an erroneous exercise of discretion is clearly shown. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 470, 326 N.W.2d 727, 732 (1982). As long as the court's discretion represents a proper application of the law and is a determination that a reasonable judge could have reached, it must be affirmed on appeal even if the decision is one that would not have been made by the reviewing court. *Milwaukee Constructors II v. Milwaukee Metro. Sewerage Dist.*, 177 Wis. 2d 523, 529-30, 502 N.W.2d 881, 883 (Ct. App. 1993).

---

[1] Section 801.15(2)(a), STATS., provides:

When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. . . . If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

A trial court may grant relief under § 801.15(2)(a), STATS., if it finds that: (1) the noncompliance was due to excusable neglect, and (2) an enlargement of time would serve the interests of justice; that is, whether the party seeking relief acted in good faith and whether the opposing party would be prejudiced by the time delay. *Hedtcke*, 109 Wis. 2d at 468, 326 N.W.2d at 731.

Excusable neglect is not synonymous with neglect, carelessness or inattentiveness. *Id.* Rather, excusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances. *Id.* Prompt action may be relevant to determine whether the neglect to act was excusable. *Id.* at 477, 326 N.W.2d at 735.

In this case, clerical error caused the summons and complaint to be inadvertently attached to Royal's pre-suit file, which was sent for reproduction before being transmitted to counsel. The error was uncovered the same day the documents returned from reproduction and, once detected, Royal filed its answer within twenty-four hours, two days after the twenty-day limit. The trial court found that the undisputed facts showed that a reasonably prudent person under the same circumstances could have made the same acts that caused the delay to file the answer, and therefore the mistakes were excusable neglect. While clerical error is not always excusable, a clerk's misrouting is not as a matter of law inexcusable neglect. The record shows that the court examined the relevant facts, applied the proper legal standard and reached a conclusion a reasonable judge could reach. Therefore, we cannot

conclude that the court erroneously exercised its discretion in finding excusable neglect.

Sentry contends that *Gerth v. American Star Ins. Co.*, 166 Wis. 2d 1000, 480 N.W.2d 836 (Ct. App. 1992), supports its position that Royal's routing mistakes are not excusable neglect. We disagree. In *Gerth*, the defendant offered no explanation for the nineteen-day delay in sending the complaint to the appropriate office. *Id.* at 1007, 480 N.W.2d at 840. As a result, we concluded that the trial court did not abuse its discretion by denying the defendant's motion to enlarge the time for answering. *Id.* In this case, Royal demonstrated how clerical error caused the summons and complaint to be misrouted.

In addition, the enlargement of time served the interests of justice in this case. The delay was unintentional, and there is no indication that Royal was not acting in good faith. Further, Sentry has made no claim that it was prejudiced as a result of this two-day delay. Based upon the totality of the circumstances, including the showing of excusable neglect, the lack of prejudice, the short period of delay, and Royal's prompt action to address the error once discovered, we conclude that the trial court did not erroneously exercise its discretion when it extended the time to answer.

Next, we address Sentry's contention that the court erred by imposing sanctions for the disposal of the refrigerator and the removal of component parts from the refrigerator. The imposition of sanctions is a matter submitted to the trial court for its sound exercise of discretion. *Milwaukee Constructors*, 177 Wis. 2d at 529, 502 N.W.2d at 883. A discretionary determination cannot be reversed on appeal unless it is

determined that the trial court erroneously exercised its discretion. *Id.*

The trial court made several critical factual determinations upon which its exercise of discretion depended. Factual determinations by the court are reviewed under a clearly erroneous standard. Section 805.17(2), STATS. Under this standard, factual determinations must be accepted as true unless they are contrary to the great weight and clear preponderance of the evidence. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575, 577 (Ct. App. 1983).

The trial court found, at least implicitly, that following the removal of the component parts Royal could not adequately test the refrigerator to determine whether it was the cause of the fire. While this issue is contested, there is sufficient evidence in the record to support this finding of fact. Sentry's expert acknowledged the importance of physically observing the refrigerator in forming his opinions. Royal's expert contended that the removal of the component parts prevented him from checking the wiring and performing specific tests on the electrical circuit, which are critical to a fire investigation. The trial court found that because the electrical system and components were not in place, such testing could not be conducted. Moreover, the disposal of the refrigerator precluded Royal from learning the serial number or model number of the refrigerator and prevented its examination of the condition of the seals on the wires used to close off moisture coming from the refrigerator and freezer compartments.

The court concluded that because Royal was precluded from doing the necessary testing to determine whether the refrigerator caused the fire, a sanction

was appropriate. Finding that the disposal of the refrigerator was at least negligence, the court found that the removal of the component parts and wiring from the bottom of the refrigerator was an intentional act by Sentry's expert. Because this removal precluded essential testing by Royal, the trial court concluded that the appropriate sanction was to preclude evidence of the condition of the refrigerator. The court did not resolve the disputed question of whether the disposal of the refrigerator was an intentional act because it determined it need not do so.

Sentry contends that the law of Wisconsin precludes a sanction tantamount to dismissal for the negligent destruction of evidence relying upon *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 211 N.W.2d 810 (1973), and *Milwaukee Constructors*, 177 Wis. 2d 523, 502 N.W.2d 881. We conclude that *Jagmin* and *Milwaukee Constructors* do not support Sentry's claim for two compelling reasons. First, the trial court found as a fact that the removal of the component parts was an intentional act that deprived Royal of the opportunity to conduct tests essential to its adequate defense of the claim made against it. Thus, we are not dealing with negligent conduct, but what the court found to be intentional conduct, at least as to the removal of the wiring and component parts. Second, we do not agree that *Jagmin* and *Milwaukee Constructors* preclude the sanction imposed by the trial court for Sentry's intentional and negligent conduct in failing to properly preserve the refrigerator, which it knew was essential to its claim against Royal. There is a duty on a party to preserve evidence essential to the claim being litigated. The failure to take adequate steps to preserve evidence

that was totally within Sentry's control is sufficient to justify the imposition of sanctions.

Sentry contends that the use of the component parts that were preserved and the numerous photographs taken by its expert were sufficient to permit Royal to defend the claim. The trial court, however, made a finding of fact to the contrary. It found that the photographs taken by Sentry's expert, together with the component parts that were removed, were inadequate for Royal's purpose. Because Sentry failed to properly preserve the refrigerator and intentionally removed the component parts from the refrigerator, which prevented Royal from conducting tests essential to its defense of the claim, we conclude that the trial court did not erroneously exercise its discretion by excluding evidence of the condition of the refrigerator.

Because we conclude the trial court did not erroneously exercise its discretion by refusing to grant a default judgment based upon Royal's failure to file an answer for twenty-two days or by imposing the sanction excluding evidence of the condition of the refrigerator, we affirm the trial court's order and judgment.

*By the Court.*—Order and judgment affirmed.